WILLIAM WALLACE *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK.

A municipal corporation is a living party within the meaning of section 399 of the Code, and in an action against it, the plaintiff may be examined as a witness in his own behalf.

The corporation of the city of New York is bound to keep the streets opened within its limits for public use, in such repair that they may be safely traveled upon; and for any injuries happening to persons through the neglect of the corporation to perform this duty, it is liable.

The sidewalk is a part of the public street, and although the corporation may impose, by ordinance, the duty upon the adjoining lot owner of keeping the sidewalk in repair, yet it does not thereby relieve itself of the duty imposed upon it by law, to keep in repair the streets of the city.

The liability of the corporation for the neglect of such a duty, differs from those cases where injuries result from obstructions placed in the streets by individuals, and in respect to which it cannot be held liable, unless it is shown that notice of the obstruction was given to its proper officers, and they had neglected to cause it to be removed.

W., while walking on Eleventh avenue at night, fell into a large hole in the sidewalk, and was severely injured.   In an action to recover for the injuries, it was not shown that the corporate authorities knew of the existence of the hole.   The judge, at the trial, instructed the jury that they might give exemplary damages

Wallace v. The Mayor, &c., of New York.

if they thought the corporation was guilty of gross negligence in suffering the hole to remain in the condition it was. *Held*, erroneous. That only such damages could be allowed as were the legitimate and direct result of the accident.

Punitive or vindictive damages can be recovered only in cases where person or property has been injured by the willful act of another, or where the act causing the injury was the result of wantonness, or reckless indifference to the rights of others.

APPEAL from a judgment and an order made at a special term, denying a motion, on the part of the defendants, for a new trial. The action was to recover for injuries resulting from the neglect of the defendants to keep in repair the sidewalk of Eleventh avenue near Thirty-first street, the avenue having been duly opened, regulated and paved for public use. At the trial, the plaintiff was examined as a witness in his own behalf, the defendants' counsel objecting thereto. It appeared from his testimony, that on going to his home from work at about 10 o'clock at night, he was walking up the Eleventh avenue, on the sidewalk, with his hands in his pockets, and when near Thirty-first street he pitched forward into a hole in the sidewalk, breaking his shoulder and two of his ribs. The hole was ten feet by seven in width, and five feet in depth. He was taken to the hospital, and although his bones had joined and mended, yet he was stiff, and at the time of the trial, which was more than a year after the accident occurred, he was unable to lift his arm. Being a machinist by trade, this naturally affected his ability to work and earn a livelihood, as he had been previously in the habit of doing. Before the injury he was able to earn from $16 to $20 a week, but now could not earn over $8 or $10 during the same time. It appeared that the plaintiff had been in a public hospital, and had paid or incurred no personal expense for his medical attendance.

No witnesses were examined for the defence, but the following ordinances of the defendants were offered and read in evidence:

" An ordinance providing for the repairs of the pavements of the sidewalks of the streets and avenues of the city of New York," passed December 29, 1853.

Sec. 1. " That the owner or owners, lessee or lessees, occupant

or occupants of any house or other building, or vacant lot front-ing on any street or avenue, shall at his, her or their charge and expense, well and sufficiently pave, according to the ordinances, and keep and maintain in good repair, the sidewalks, and curb and gutter of such street or avenue, in front of any such house or other building, or vacant lot."

Sec. 2. "Upon complaint being made to the street commis-sioner, to his satisfaction, that any sidewalk, and curb and gutter, or either, are not paved or repaired according to the ordinances, it shall be lawful for the street commissioner to cause a notice to be served upon the owner or owners, lessee or lessees, occupant or occupants of any such house or other building, or vacant lot of ground fronting on any street or avenue, to repair or relay, as the case may require, the sidewalk, and curb and gutter, or either, in front of the same, within ten days after the service of such notice."

Sec. 3. " In default of such owner or owners, lessee or lessees, occupant or occupants, repairing or relaying, as the case may re-quire, such sidewalks and curb and gutter, or either, within the time required by said notice, and complying with the said notice, it shall be lawful for the street commissioner to order the same to be done, and in case the expense thereof shall not exceed the · sum of $250, to appoint such person or persons to do the same as he shall deem proper; and in case such expense shall exceed the aforesaid sum of $250, the same shall be done by contract, according to the ordinances."

Also the following sections from the revised ordinances of the defendants:

Sec. 22. " In all streets in the city of New York, of the width of forty feet and upwards, which are paved, or shall hereafter be paved or repaved, the sidewalks or footwalks, between the lines of the streets and kennels, shall be of the following width, that is to say : 1. In all streets forty feet wide, ten feet.   2. In all streets fifty feet wide, thirteen feet.   3. In all streets sixty feet wide, fifteen feet.   4. In all streets seventy feet wide, eighteen feet.   5. In all streets eighty feet wide, nineteen feet.   6. In all

streets above eighty feet, and not exceeding one hundred feet, twenty feet. 7. In all streets of more than one hundred feet, twenty-two feet and no more."

Sec. 23. " In all streets less than forty feet in width, such proportion thereof, as may be directed by the street commissioner, shall be used and flagged for sidewalks or footpaths."

Also the charters of the defendants.

The defendants' counsel then moved to dismiss the complaint on the following grounds :

1. That no cause of action had been shown against the defendants. 2. That the ordinances of the defendants cast upon the owner, occupant, or lessee of the lots fronting upon the streets in question, the duty of paving and keeping in repair the sidewalks in front of their lots. 3. That such owners, occupants, or lessees were alone responsible to the plaintiff for any injury which he had sustained through any defect in the sidewalk. 4. That the hole in the sidewalk into which the plaintiff fell did not appear to have been dug by the consent of the defendants. 5. That the case presented merely a violation of the ordinances of the defendants, by the owners, occupants, or lessees of the lot fronting on the street in the avenue in question, for which violation the defendants are not liable. 6. That no knowledge of the existence of the hole in question was brought home to the defendants, or to their officers. 7. That it does not appear that the hole in question arose from a neglect to repair the sidewalk on the part of the defendants. The court denied the motion, and the defendants excepted.

The cause was summed up by the counsel for the parties, and the court charged the jury : That it was the duty of the defendants to keep the streets of the city in repair, so that they might be safely traversed, at all times, by citizens or others; and that it was their duty, while making such repairs, to surround the locality, when necessary, by safeguards, so as to prevent injury to any person therefrom. That there were certain cases in which, when a contractor was performing work for the defendants, and injuries were sustained by his negligence,

the defendants would not be liable for such injuries, but that this was not one of those cases. That the questions for the jury to determine were: 1. Was the plaintiff guilty of negligence which contributed to the production of the accident? If he was, then he was not entitled to recover. If he was not guilty of such negligence, then the jury must consider whether the defendants were guilty of negligence, and if they were, then what amount of damages the plaintiff had sustained. That in estimating the damages, they might allow compensation for the pecuniary loss which he had sustained, if any, and the pain and suffering to which he had been subjected. And further, if the jury should determine that the defendants, in permitting the hole in question to remain as it was when the plaintiff fell into it, were guilty of gross negligence, they were at liberty to give the plaintiff exemplary damages.

The counsel for the defendants then asked the judge to charge as follows: 1. That the defendants are not liable for every act of negligence of their servants. The judge refused, and the defendants excepted. 2. That the defendants are not liable for any act of negligence occasioned by their servants, unless notice of the subject has been brought home to the knowledge of the corporate officers. The judge refused, and the defendants excepted. 3. That the defendants are not liable, unless more than a reasonable time has elapsed between such notice and the accident to allow the street or highway to be repaired. The judge refused, and the defendants excepted. 4. That notice to the said defendants is an affirmative fact which must exist, and be proven, before the law gives a right to recovery. The judge refused, and the defendants excepted. 5. That the hole in question, being on the sidewalk, the plaintiff cannot recover. The judge refused, and the defendants excepted. 6. That as mattter of fact, the night being dark, the plaintiff's walking with his hands in his pockets might have contributed, and ordinarily would contribute, to the accident. The judge refused, and the defendants excepted. 7. That it is the duty of the owner, occupant or lessee of the property fronting on the street, to keep

and maintain the sidewalks and curb and gutters in repair in front of their property, and that for injuries resulting from a neglect to make such repair the defendants are not liable. The judge refused, and the defendants excepted. 8. That if the plaintiff is entitled to recover at all, he is only entitled to recover for the damages which he sustained as a legitimate and direct result of the accident. The judge refused, and the defendants excepted. 9. That the plaintiff is not entitled to recover punitory or vindictive damages. The judge refused, and the defendants excepted. 10. That in this case there is no evidence at all that the plaintiff has expended any money about his cure, and none which would enable the jury to form a correct estimate of how much, if any, pecuniary damages the plaintiff ought to be allowed for any pain he suffered. The judge refused, and the defendants excepted.

The jury rendered a verdict in favor of the plaintiff for $500, and judgment was entered thereon.

A motion for a new trial having been made and denied at special term, the defendants appealed.

*Abraham R. Lawrence, Jr., assistant corporation counsel,* for the appellants.

I. The plaintiff should have been excluded from testifying. *a.* The Code, (§ 399), as amended, was clearly intended to admit the testimony of one party to a suit, only when the adverse party is living and capable of testifying in his own behalf *b.* The defendants are not, within the meaning of the section, a living party. *c.* The effect of admitting the testimony of the plaintiff, is to enable a party to put his own coloring upon the case, while the other party is, from the nature of things, excluded from rebutting that testimony.

II. The motion for a dismissal of the complaint should have been granted. *a.* The ordinances of the defendants impose upon the " owners, occupants, or lessees of the lots fronting upon the streets of the city, the duty of paving and keeping in repair the sidewalks in front of their lots." *b.* The defendants were au-

thorized by their charters to pass such an ordinance, and it was a proper exercise of their governmental power. Charter of Montgomerie, § 14, (Kent's ed., 1854), p. 94. *c.* The case, therefore, presents merely a violation of an ordinance of the defendants by the parties owning or occupying the lots fronting upon the sidewalk in question; and for the injuries sustained by individuals from such a violation, it is well settled that the defendants are not liable. *Levy* v. *Mayor,* 1 Sand. 465; *Griffin* v. *Mayor,* 5 Seld. 456; *S. C.,* opinion SANDFORD, J.

III. The principle established in the case of *Hutson* v. *The Mayor,* is not applicable to this case, because, 1st. There is no legal evidence showing that the place at which the plaintiff was injured was ever laid out or opened as a public street, or that the defendants had control thereof. 2d. It does not appear that the hole in question was caused by a neglect of the defendants to repair the sidewalk. 3d. In Hutson's case, the injuries of which the plaintiff complained were occasioned by a neglect of the defendants to repair the carriageway of the street, which had been out of order for a long time; and it did not appear that there was any ordinance of the defendants imposing the duty of making such repairs upon private individuals. 5 Seld. 163. 4th. The evidence in Hutson's case showed that the excavation into which the plaintiff fell had been in existence for such a length of time as would justify the court in presuming that the corporation had notice of its existence. In this case, no notice of the existence of the hole into which plaintiff fell was brought home to defendants.

IV. The judge erred in refusing to charge, that notice to the defendants of the existence of the hole, and the lapse of a reasonable time between such notice and the accident, to allow the defendants to repair the same, must be shown, to entitle the plaintiff to recover. *a.* The charters of the defendants only allow them to have work performed when the expense exceeds a certain amount ($250), by contract, made after an advertisement for ten days, &c. If the plaintiff can recover without proof of notice and neglect to repair, then, while the charter of

1853 prohibits expenditures beyond $250, without advertisement, the law would render the defendants liable for not doing an illegal act. *b.* Besides, the ordinances of the defendants only authorize the street commissioner to order the sidewalks to be paved or repaired after complaints have been made to him that the same are out of repair, and after he has notified the owners, &c., of the lots, &c., to pave or repair the same, and they have neglected so to do. There can be no dispute about the power of the defendants to pass the ordinance. Montgomerie Charter, § 14. The defendants are not bound to see, at their peril, that all their ordinances are enforced. *Levy* v. *Mayor*, 1 Sand. 465 ; *Griffin* v. *Mayor*, 5 Seld. 456. And until complaints are made, or notice given to the street commissioner, there is no neglect of duty, on the part of the defendants, for which they are liable to respond in damages.

V. The learned judge erred in refusing to charge as requested, that "if the plaintiff is entitled to recover at all, he is only entitled to recover for the damages which he sustained as a legitimate and direct result of the accident," and that "the plaintiff is not entitled to recover punitory or vindictive damages," as in the 8th and 9th propositions of defendants' counsel. *a.* There is no malice or moral wrong shown on the part of the defendants. *b.* In such cases the jury cannot give anything beyond compensation for the actual loss sustained by the injured party. Sedgwick on Damages, 82 ; *Clark* v. *Brown*, 18 Wend. 213, 229 ; *Butler* v. *Kent*, 19 John. 228.

VI. The damages to which the plaintiff is entitled, (if entitled to recover at all), being confined strictly to actual compensation for the loss which he sustained by the injury, and there being no evidence as to the amount which he expended for his cure, nor any evidence by which the jury could measure such expense, the defendants were entitled to have the jury instructed, as requested in the 10th proposition

*F. H. B. Bryan and Daniel W. Clarke*, for the respondents.

I. The intent and meaning of the statute regarding the exam-

ination of a party in his own behalf, applies, where corporations are defendants, as it does to individuals. Every party interested in a corporation can be equally examined against the plaintiff.

II. The charge of the judge was not excepted to by the defendants. They cannot, therefore, avail themselves of a refusal generally to charge further. The request to charge must be to supply some error in the original charge.

III. Notice to the corporation was not necessary; the fee of the public highways or streets is vested in them. A tax is levied to keep them in repair. The defendants were bound to keep them in repair without notice. The ordinance requiring th₁ sidewalk to be repaired by the owners, does not excuse the de. fendants from keeping it in repair, if not done by such owner₁. A bridge or highway, built by an individual, must be keŗ₁ in repair by the public. 23 Wend. 446; 2 East, 342. Th₁ streets are in fact public highways, opened by the corporatioı, and in their possession, to be repaired and kept by them. The ordinance is for their benefit. The public who are injured by the neglect of the defendants, are not deprived of their remedy. The only notice required is by the corporation to the owners of the houses, before they can call on such owners to repair the sidewalk.

IV. There was no proof, on the part of the defendants, that any sidewalk had ever existed where the accident occurred.

V. The damages were moderate, considering the injury inflicted on the plaintiff. The defendants were properly held liable for a gross neglect of public duty.

By the Court, DALY, First Judge.—The first question in this case is whether the plaintiff could be examined as a witness in his own behalf, in an action against the corporation of the city of New York. By the 399th section of the Code, the examination of a party as a witness on his own behalf is conditional. It can be had where the adverse party or person in interest is living, unless the opposite party is the assignee, administrator, ex-

ecutor, or legal representative of a deceased person. It is objected that the defendants here are not, within the meaning of the section, a living party, but an artificial body, created for certain political and governmental purposes, and that the effect of admitting the testimony of the plaintiff in this case, is to enable a party to put his own coloring upon the case, while the other party is, from the nature of things, excluded from rebutting that testimony. That the intention of the legislature was to give each an equal chance for placing the court in possession of the facts relied upon by him for complaint and defence; not to give one party an advantage over the other in that respect.

The defendants may, in my judgment, be regarded as a living party within the meaning of the section. The chief distinguish ing attribute of a corporation is its power of continuous dura tion, unaffected by the death, incapacity, or change of its members. As Lord COKE expresses it, "it is not subject to imbecilities or death of the natural body, for a corporation aggregate of many is invisible, immortal." *Case of Sutton's Hospital*, 10 Coke R. 32 b. It is calculated for and capable of duration forever, where no limitation is fixed by the act that creates it, though it may be brought to a termination by accident, or by certain defaults of duty on the part of its members, at any period; but however long its duration, the corporation always continues the same, and the same rights, privileges, duties and liabilities attach to it as it had at the first moment of its creation, precisely as though it was an individual. Grant on Corporations, 3. It is so far considered to have a personality of its own, that the word person, in statutes, has often been construed to include corporations. *The Dean and Chapter of Bristol* v. *Clark*, 1 Dyer, 83 b; 2 Coke's Inst. 722; *Cortes* v. *Kent Waterworks Co.*, 7 B. & C. 314; *Boyd* v. *Craydon Railway Co.*, 4 Bing. N. C. 669; *Attorney General* v. *Newcastle*, 5 Beavan, 307; 1 Reeves' History of the English Law, 76, 79. It may sue or be sued; and, as it has this unbroken personality and power of perpetual succession, it may, without any violation of language, be referred to and embraced in a statutory designation of a living party. Nor will this construc-

tion have the effect of allowing one party to give testimony which the other is necessarily excluded from rebutting, or defeat the intention of the legislature by not giving each party an equal chance of testifying. The parties defendant to this action are the mayor, aldermen and commonalty of the city of New York, by their corporate name or title, who are, and always were, together with their officers and agents, competent witnesses in an action in which the rights or liabilities of the corporation are in controversy. *Van Wormer* v. *The Mayor, Aldermen and Commonalty of the city of Albany,* 15 Wend. 262; *Watertown* v. *Cowen,* 4 Paige, 510; *Ex parte Kip,* 1 id. 613; *Falls* v. *Bellknapp,* 1 Johns. 486; *Corwin* v. *Haines,* 11 id. 76; *Bloodgood* v. *Jamaica,* 12 id. 285; Code, § 398. And this applies not merely to the members of municipal, but also to private corporations, the members or stockholders of which were formerly inadmissible as witnesses by reason of their interest; a disqualification which no longer exists. The defendants, therefore, in this action, could avail themselves of every right that any other defendant could have, and even more, as they could all be examined as witnesses whether the plaintiff offered himself as a witness or not.

The corporation are bound to keep the streets and avenues of the city in such repair that they may be safely traveled, when they are opened for public use, and if they negligently suffer them to get out of repair, they are liable for any injuries that may happen to persons through such negligence. *Hutson* v. *The Mayor, &c., of New York,* 5 Seld. 163; *The Mayor, &c., of the city of New York* v. *Furze,* 3 Hill, 612; *The Rochester White Lead Co.* v. *The City of Rochester,* 3 Comst. 464. The evidence was sufficient to warrant the jury in finding that the plaintiff was walking, at the time of the accident, through an avenue open for public use. He was walking up the Eleventh avenue at 10 o'clock at night, when, at the corner of Thirty-first street, he pitched forward into a hole in the sidewalk, ten feet wide, seven feet across, and five feet deep, and was severely injured.

The corporation have provided, by ordinance, that the sidewalks shall be paved and kept in good repair by the owners,

lessees, or occupants of the houses or lots fronting on any street or avenue, under a certain penalty, and if they neglect to do so, it is to be done by the corporation at the expense of the owners, lessees or occupants, in the manner provided by the ordinance. Upon complaint made to the street commissioner, he is to notify the owners, &c., and if they do not repair within a certain time, he is to have it done, if the expense does not exceed $250, and if it exceeds that sum, it is to be done by contract in the manner provided by ordinance. The sidewalk is a part of the public street, designed for the use of those who travel on foot, and though the corporation may impose upon the owners of lots fronting upon the streets or avenues, the burden of paving and keeping the sidewalks in repair, they do not thereby relieve themselves of the duty imposed upon them by charter and by statute, of "altering," "amending," and "keeping in repair" the streets and highways within the city. Kent's Charter, 15, 99, 235, 237; Laws of 1813, ch. 86; 2 Rev. Laws, 407, § 175. *Wilson* v. *The Mayor, &c., of New York*, 1 Denio, 601. And if they suffer, as in this instance, a part of the public highway to remain out of repair in so exposed and dangerous a state, that a passenger, without any negligence on his part, drops, at night, into a pitfall in the sidewalk, and is injured, they must answer to the injured party for the damage occasioned by their negligence.

Their liability for the neglect of a duty like this, to keep the public streets in repair, which is imposed upon them by statute, is distinguishable from cases where the streets are obstructed by the acts of others, as in *Griffin* v. *The Mayor, &c., of New York*, (5 Seld. 457), where parties erecting buildings suffered piles of rubbish to encumber the street, which led to the accident, for which the corporation were sought to be made liable; or *Levy* v. *The Mayor, &c.*, (1 Sandf. S. C. R. 465), wherein they were sought to be made liable for an accident caused by swine running at large in the streets, in which cases they could not be held liable for negligence until they were notified or advised of the obstruction, and had neglected to cause it to be removed.

I think, however, that the instruction to the jury that they might give exemplary damages if they thought that the corporation was guilty of gross negligence in suffering the hole to remain in the condition it was, was erroneous, and that the defendant was entitled to have the jury instructed as he requested, that the plaintiff could recover only for such damages as were the legitimate and direct result of the accident, and that he was not entitled to recover punitory or vindictive damages. For all that appeared in the evidence, the hole in the sidewalk may have been the work or act of a private individual, in no connection with the corporation, and there was nothing in the evidence to show that the corporate authorities were notified of it or had any knowledge of its existence. The recovery of punitory or vindictive damages is allowed only where the act causing the injury has been willfully done; where the circumstances show that there was a deliberate, preconceived, or positive intention to injure, or that reckless disregard of the safety of person or property which is equally culpable. The evidence in this case would not warrant the jury in forming any such conclusion as respects the corporation. It may be doubted if the instruction had any injurious effect, as the damages found by the jury were very moderate under the circumstances. Still we cannot say that it had not, and will therefore, though reluctantly, be compelled to order a new trial.

Judgment reversed and new trial ordered; costs to abide the event.

---

NOTE.—On a second trial of this case, in January, 1860, before Judge HILTON, substantially the same facts were established, and under a charge given in conformity with the views expressed by the general term, the jury, after a short deliberation, rendered a verdict for the plaintiff of $5,000, which, upon motion subsequently made, was set aside as excessive, and a new trial ordered, unless the plaintiff stipulated to reduce his recovery to $2,500. This was done, and the case settled.