BERNHARDT MÜLLER, APPELLANT, *v.* THE CITY OF NEWBURGH, RESPONDENT.

*Negligence — liability of a city to one injured by falling on a slippery sidewalk — notice to the city of the existence of the defect must be shown.*

The plaintiff, while passing along a street in the village of Newburgh at about eight o'clock in the evening of Sunday, January ninth, slipped upon some ice and fell and broke his arm. Four or five inches of snow had fallen on the preceding Thursday, after which it had rained and had then frozen hard. At the time of the accident a light snow was falling which covered the ice. There

was no defect in the sidewalk and no proof that the city had notice of the existence of the ice.

In an action by the plaintiff to recover damages for the injuries so sustained:

*Held,* that the plaintiff was properly nonsuited, as there was no proof of any negligence upon the part of the defendant. (PRATT, J., dissenting.)

APPEAL from a judgment in favor of the defendant, entered upon a nonsuit directed at the circuit.

*Grant B. Taylor,* for the appellant.

*Russel Headley,* for the respondent.

DYKMAN, J. :

It is the claim of the plaintiff in this action that he was injured and damaged by a fall in one of the streets of the city of Newburgh, and that the negligence of its municipal officers intervened to produce the result.

The trial of the cause developed the following facts : On Sunday the 9th day of January, 1881, about eight o'clock in the evening, as the plaintiff was walking along the sidewalk in Carpenter street he slipped and fell and broke his left arm near the wrist. There was ice frozen on the sidewalk ; it was snowing at the time and there was snow on the ice sufficient to cover it. Four or five inches of snow fell on the Thursday before and then it rained and froze hard. It may be inferred from the testimony that the rain fell and the ice formed soon after the snow storm on Thursday; so that we have a case where the snow first came down on the sidewalk, and was softened by the rain, and then the whole mass was congealed and hardened as it lay, and while a light snow was yet falling on this surface of ice, the plaintiff slipped and received his injury; the whole state and condition of the sidewalk at the time being the result of natural causes, unaffected by any artificial or external interference. There was no defect in the sidewalk itself. The snow fell on Thursday, but it does not appear when the rain came or the ice formed. There was no proof that the municipal authorities had actual notice of the existence of the ice, and we cannot say it had remained so long as to become notorious or to justify the inference of notice to the municipal authorities that it was there. In fact the plaintiff testified that he walked down and up there the

day previous and did not see the ice on the pavement. It would, therefore, be very severe to charge the city with constructive notice of the existence of the ice under such proof. This action is founded on the neglect of the municipal corporation to remove this cause of danger, and proof of negligence in that respect is essential to its maintenance. Has that been produced. The proof is that the snow and rain fell from heaven, obedient to the laws of nature, and were hardened to ice by the wintry cold, and neither of these occurrences were under the control of the defendant. The presence of the ice produced the fall of the plaintiff; its formation was caused by the cold weather of winter, and the defendant had no notice either actual or constructive of its existence. The city was responsible only for the exercise of reasonable diligence after the unsafe condition of the sidewalk was known to its officers by either actual or constructive notice, and as there was no such notice it seems to follow that there was no neglect. It is not practicable for the municipal corporations of this State to establish an incessant inspection of their streets, and without that it is impossible to guard against the conditions arising from natural causes. In our latitude climatic changes are frequent and sudden. Ice and snow may dissolve into water during the day, even in winter, and spread over the sidewalks and harden to ice in the night, or the pavements may become slippery from moisture or rain, and both these causes may produce accidents and injuries which no extent of vigilance or care would prevent and which the corporation cannot be called on to redress. They do not guarantee or insure the safety of their citizens. Casualties and misfortunes are incidental to society and to individuals, and when they result from natural causes they cannot be adequately redressed by law. In our climate the streets and sidewalks are icy and slippery in the winter, and this condition is produced by natural causes and does not depend on any care or skill in their construction or reparation. The traveler must then beware and exercise care and caution commensurate with the increased danger. He may be passing over smooth ice formed within a few hours which is unknown to any officer and which it is impractical to remove. If traveling with animals he must see that they are sharp shod, if on foot he must proceed with care and caution. If failing in this he sustains injury he is in such case without redress. It is not intended to intimate

that, in no case of accident or injury resulting from surface ice or other natural causes, there can be a recovery against the municipality, but only that no recovery can or should be afforded in cases like this.

The judgment should be affirmed, with costs.

CULLEN, J., concurred in the result.

PRATT, J. (dissenting):

I have concluded that this case should have been submitted to the jury and hence that a new trial should be granted. Plaintiff slipped and fell upon an icy place in defendant's sidewalk about eight P. M., Sunday, January 9, 1882. A light snow had been falling from about one o'clock P. M. until the accident. I do not regard this fact as an element of any importance on this appeal, except so far as it illustrates the dangers resulting from the *previous condition* of the walk. The storm was too recent to justify the inference of defendant's knowledge of this new or increased danger. (*Blakeley* v. *City of Troy*, 18 Hun, 167.) The difficulty with the case results from the *previous condition* of the street. There was testimony tending to show that from the preceding Thursday the walk had been in a *dangerous condition* resulting from an accumulation of snow and ice to the depth of three or four inches, and that no ashes or other material had been used to obviate this danger. It does not appear whether this *dangerous condition* arose from smooth or uneven slipperiness, nor does it seem important in my view of the case. It may have been uneven. Ordinary observation teaches us that snow may become padded or packed upon a sidewalk in little mounds and even in ridges. If that was the cause of the danger the case might face within the precedents applicable to uneven walks, for it appears the accumulation was three or four inches in depth. So, too, it might have been smooth but no less dangerous. It is enough that the witnesses, *without objection*, declared that the walk was in a *dangerous condition* because of this accumulation of ice and snow; dangerous because slippery, and therefore especially perilous in view of the possibility of future light snow storms which would certainly obscure and perhaps increase the danger. I cannot concur in the views that the defendant was not liable because this accumulation of ice resulted from natural causes as distinguished from human agency. The

defendant was bound to keep its streets in a safe condition. Its liability does not depend upon the cause which resulted in the dangerous condition of the walk. If it had become *obviously and notoriously dangerous* from natural causes the liability, in my view, would be quite as plain as if the peril resulted from the wrongful act of some trespasser. I fail to discover any material distinction between cases of danger from mere slipperiness of the walk, the result of defective construction (*Cromarty* v. *City of Boston*, 34 Am. Rep., 381; 127 Mass., 329), or snow and ice or other slippery substance unreasonably left upon it. (*Todd* v. *City of Troy*, 61 N. Y., 506.) It is quite as much an obstruction to the traveler that he *slip down*, as that he stumble over some projection or step into some depression and fall down. So, too, he is equally obstructed whether he be required to avoid a projection, a pitfall or a slippery place in the street. The only distinction in any way affecting liability between defective construction and subsequent obstructions lies in the degree of activity required to remedy the difficulty. In the former case the municipality would be presumed to know the defects in construction and would be required to act immediately, while in the other some notice, either actual or constructive, would be necessary before the duty of action would arise. But whatever may be said of the case on principle, it seems to me that the recent authorities clearly indicate the duty to remove or otherwise obviate a *known danger* resulting from snow and ice, whether their presence result from natural causes or from some unauthorized human agency. In *Todd* v. *City of Troy* (61 N. Y., 511), the trial judge charged the jury that the municipal authorities are called upon to observe, notice and see that the public streets, in time of winter, are *reasonably cleared* of snow and ice, and that if the presence of ice upon the sidewalk did occasion the fall of the plaintiff, and the ice was slippery by reason of cold weather, then the defendant is not liable unless it also appeared that the accumulation of ice at that point had remained there so long as to make the obstruction public and notorious. These rules were unqualifiedly stated and have been unqualifiedly affirmed. I think they state the principle which applies to and governs this case.

The remaining question relates to the constructive notice of the dangerous condition of this walk, for no actual notice was asserted.

I cannot say that the interval of three or four days, between Thursday and this accident, was too short a time for such a condition of the street to become notorious; at all events it seems that a jury might properly have drawn that inference. The question of contributory negligence is, of course, in the case; the plaintiff had better opportunity to discover this danger than the defendant's officers. It had all the while existed within seven feet of his own door. He had been in the street. If the defendant was chargeable with notice of the fact, it would be odd indeed if plaintiff had failed to discover the same difficulty. But he may not have known it. If he did not know it he stood in especial danger. It is obvious that this also was a question for the jury. (*Todd* v. *City of Troy*; *Blakeley* v. *City of Troy, supra*; *Goodall* v. *Crofton*, 31 Am. Rep., 535; 33 Ohio, 271.) Even if he had seen the ice there before it would be a fair question for a jury whether he was bound, under all the circumstances, to remember the fact and avoid that place. If these views are correct, it follows that the judgment should be reversed and a new trial awarded, with costs to abide the event.

Judgment affirmed, with costs.